Case number 23-1793. Timothy L. Jenkins et al. Appellants v. Howard University and Howard University Board of Trustees. Mr. Temple for the Appellants, Ms. Sager for the Appellees. Good morning. Good morning, your honors. May it please the court. My name is Donald Temple and I represent 10 alumni of our beloved Howard University. And I should say at the outset, their hearts are hurt that we have to be here today to bring to a challenge the bylaws of the university and the implementation and the following of them, as well as the students and the alumni that support them. We seek a reversal and remand here because the appellants believe there is no federal jurisdiction for this case to be in this particular court. In the alternative, we seek a reversal and remand and an instruction that the second amended complaint filed by the appellant below should be authorized and allowed. The stand is approved for a known de novo on the jurisdiction issue of abuse of discretion on the remaining issues. I would say if the court's indulgence, and I think it's important to quote with indulgence, I'd like to suspend with facts, except for one critical fact, which is paramount in this particular case. The picture has been painted that the board of trustees has acted. This is a board action. The primary act here, however, directed court's attention to the joint appendix at 74, 31, 76, 78, 269, 270, and 345 is this. This action started not because the board made a decision, but because a committee of the board, the governor's committee on April the 6th, 2020, suspended the elections of students, faculty, and alumni that were in play. The alumni elections were, they began as a result of alumni protests and struggle in 1923, 24, and 25, culminating in a set of bylaws that were passed with negotiations with the alumni in 1926, as well as congressional scrutiny of that particular process. That's not the issue. That particular committee chairperson suspended those elections without board consideration. The appellees have written and suggested that there was a board approval or the board announced this. The references that I've given to the court refute that almost as a matter of law. The board of trustees did not approve the recommendation of the governance committee chairperson. Nevertheless, the university suspended the elections of all of the stakeholders between April 6th and December, November, 2021. As a result of the attrition, naturally following the non-election of the alumni students and faculty, all but one alumni remained on the board when the board voted to remove alumni trustees. The point of that is that we've articulated very clearly in our writings the nature of the bylaws. There is not, there is no connection between the interpretation of the bylaws and the federal charter here, nor is there a violation of a federal statute or the constitution here. This is a state law issue. And under both Gunn and an Empire Health case, which refute the arguments that the appellees raised inciting the Grable test, there's one not a substantial federal issue here. Do you have a view on whether when Congress issued the charter for Howard University, was it acting as a national legislature, like for charters for Amtrak or the Red Cross, or was it acting as the local government for the district doing local governments do and that is charter corporations? Thank you, Judge Millett. I do. And I thank the court for the order with the inquiry. It's our position that our beloved Howard University is a federally charted institution. Article 1, Section 8, Clause 17, which articulates the District of Columbia's, which articulates the congressional control of the District of Columbia, while it's in play in 1865, was not the basis for the charters or the creation of Howard University. And I put that in the context of the reconstruction that followed the period of enslavement and the priorities that were taking place, beginning with the 1865 13th Amendment, 1866 Civil Rights Amendment, 42 U.S.C. 1981, the 1867 Howard emerging on the education front, and then 1868, the 14th Amendment, and then 1870, the 15th Amendment. So the Congress's intent at that time, though that argument does not necessarily implicate the appellant's argument, was to create a federal institution. However, we do not believe that that particular case, in fact, we believe that case benefits the appellant in the analysis coupled with... Oh, I'm sorry. You say Congress was acting as a national legislature, creating a national university. And so, therefore, I would say quite contrary to your position that there's no federal law issue under the charter. Well, actually, I don't think it's that simple, with all due respect, Your Honor, because it didn't create a national university. It created a federally charted university. And at that particular time, the context has... Was it doing the chartering because there was no district government to do it? Or was it doing the chartering because it was making a decision for the nation? Was it making a decision for the district to have this university? Because there's nothing in all you said about the history. I understand the timing. It certainly makes perfect sense. But the charter itself just says we're going to charter this university, just like it says for Georgetown and GW and other universities in the district, because there was no one else to do the chartering. I don't think that the analysis stops there. And I don't think that it's a, quote, unquote, national university. It is a federally charted university. We got that. The question under the case we cited in our order is, it's federal in the sense that Congress did it, signed by the president. It's federal in that sense. But the federal government also served as a government for the District of Columbia, had that charge during the relevant time period. Well, Your Honor, the distinction, I see my time is very tight, but I'd like to point to the court's attention to the distinction between the 1871 congressional action reference in that particular case, which created a District of Columbia government where it's specifically acting under Article I, Section 8, Clause 17, versus the creation of how it did charter. And the reason why I said... What power was it acting under when it created the charter? Under the federal, under its congressional authority. Well, that's... The authority you cite to create the district government is also part of Congress's authority. I'm trying to ask which type of authority. Well, it's concurrent authority. Well, it's... I'm trying to ask which authority was used. Was it its control over the district as a seat of federal government? The district didn't formally exist. My answer to your question, Your Honor... I understand that. My answer to your question is that it is a federally chartered institution, but more importantly... That's not my question. That can't be the answer to my question because that's not my question. My question is, in what capacity... Congress only acts in federal capacity. And it's acting in its federal capacity. That's my answer. What do you mean by federal capacity? In its capacity to enact laws that are consistent with its policies and practices. And that is how it emerged, but not out of an interest of creating a university exclusively for the District of Columbia. What it did, it created a university that then became subject, as any other chartered institution located in a particular state... Subject to the concurrent jurisdiction dynamics that we see exactly here. Which then brings us to what the university is citing with Grable in particular. And that standard of review, which is applicable here. We believe that the empire and gun cases, Supreme Court cases on the question of federal jurisdiction... Notwithstanding, district property is the jurisprudence on the case law that governs here. And by that, that means that the tests that are applicable are the tests that the lower court applied. But we think erroneously, which are number one, the question of whether there's a disputed... Whether there's a substantial federal question. And to the court's question and the dichotomy that we believe is that just because there's a charter... Doesn't necessarily, absent more, implicate a federal question. Additionally, in this case, unlike the case cited by the appellants, this case, the claim that was brought was a broad understate law. It wasn't brought because there's a violation. We never said that the university violated its charter. It said the university violated its bylaws. Those bylaws, the university tries to say they're extended by the charter. The Congress set up this system by authorizing persons to set up a board of trustees. The board of trustees then passed these bylaws. The question is whether the violation of bylaws in the governance of the university implicate a substantially disputed federal question. We submit to the court that the case stops there. My time. We'll give you a couple minutes for rebuttal. Very well. Thank you. May it please the court, Joanne Sager on behalf of Howard University. I'd like to start with the answer to the court's question. We think that Congress was acting in its capacity as a national legislature and created federal law in enacting Congress's in enacting Howard's charter. We think there are three reasons for that. The first, you can look to the text of the charter and the text of its amendments. The second is the statutory context in which Howard was chartered. And the third is post enactment history. I'd like to start with statutory context in chartering Howard, as my friend on the other side noted. The Civil War ended in 1865. Shortly after that, Congress and creates the Freedmen's Bureau. Congress then extends the Freedmen's Bureau for a year. And at the time, exact time at which Congress believes the Freedmen's Bureau will expire is when Congress enacts Howard's charter over presidential veto. And Congress names Howard University after the former commissioner of the Freedmen's Bureau. As you know, one of the major missions of the Freedmen's Bureau was educating newly freed slaves. As this former commissioner explained, it was very difficult to do that in the South. Congress was acting to solve a national problem. That's actually explained further in the legislative history of the 1928 amendment of the charter. You have the committee report, which specifically says that the justification for creating an annual congressional appropriation for Howard University is justified by two things. One is, quote, 45 years of congressional action. Those 45 years of actions are the 45 years of national annual appropriations for Howard University. Back to the charter and the legislative history. So Congress are doing a lot back then and certainly was doing things on a national scale, as you mentioned. But when it enacted the charter for before it did that. Senator said, I now propose to proceed with district business. And it did an amendment to the jail bill. Wouldn't be national legislation. And then it did Howard's charter. So it was doing Howard's charter at a time that it was doing district business. And then it went on to do things for Foundry Methodist Episcopal Church. There's nothing in the text of the charter that sounds. If there's something in the text of the chart you want to point me to, but it simply says the University for the Education of Youth and Liberal Arts and Sciences. Yes, your honor. Actually, on that of the larger context that you're talking about in the charter. Sure, your honor. If we're looking at things that happened the same day, Congress also created the Department of Education that same day. Did it say now we're turning to district business? And that's kind of the relevant matter. I don't have considered it. It said, I propose now to proceed to with the district business. You can do a lot in a day, but it does things and it shifts. Yes, your honor. I think the best thing that I can point you to in response to that would be the legislative history of the 1928 amendment. How does that tell us how the charter works? It's an amendment to the charter. It's about appropriations. Do you think it entirely recreated the university? I do not think it entirely recreated the university, but I do think that if you look at the committee reports there, the committee tries to explain what it is it's doing there and the national significance of Howard University. It doesn't just say, you know, we are discussing exactly why we're formalizing this annual appropriation to make it in perpetuity. Instead, it says we need to talk about why it is that it's important that Howard University be allowed to continue to survive and thrive and become a first class institution. And the second reason that the committee report gives is, quote, the national importance of the Negro problem. The committee goes on to explain that it believed that Congress had an obligation to African-Americans that was, quote, even stronger than in the case of the Indian, end quote, because of the history of slavery and segregation. Congress thought it was, quote, of great importance to the country of having an institution capable of developing trained leaders for the colored race in all walks of life. On the other hand, this opportunity exists for white students in every state of the union. So Congress really was trying to address a national problem. And even though that there in 1920s, based on making a governmental decision to appropriate money, which is different than appropriating the university as a national university. I disagree, Your Honor, respectfully. And the reason I disagree is because Congress explains it needed to formalize this national appropriation in order to continue and assure the success of the university. Is Congress funding other HBCUs? At that time, no, it was not through the same formal annual appropriation stream where there's a guaranteed line item in Congress's budget saying that it's going to provide money for the university every single year. Was there appropriations for other HBCUs or not? There are different revenue streams. I'm getting there. There are different revenue streams and they aren't annual in the same way. The only other university that has a line item in this way is Gallaudet University, which, again, is another university that Congress created to solve a national problem and deal with a special population whose education it didn't think was being adequately seen to you on the state level. So, yes, there are Pell Grants, for example, that go to different universities. There are occasional educational bills that seek to fund other universities. But the idea of a line item in every single annual spending bill having a line that refers to a specific university, that's just Howard and that's just Gallaudet. You said they weren't rechartering it, so that's, I think, why don't we have to look at the creation of the original charter only? Because... Whether the charter itself is federal law for purposes of arising under jurisdiction. Sure, you're right. I think that it's a relatively standard, ordinary tool of statutory interpretation to look at post-enactment history. And I think that the post-enactment history... Actually, there's a lot of cases that say we don't look at post-enactment history to say what a statute meant. There's more cases that say that than say otherwise that I'm aware of. I disagree, Your Honor. I think when a statute is amended, we talk about whether in amending the statute, Congress speaks to wanting to continue a certain purpose or move forward with a different purpose or change purpose. And I think that what happened here is Congress amended it. You have a new statute and you're interpreting the new statute. That's what you're doing. But that doesn't... You just said they weren't reincorporating it. They weren't rechartering it. So, for purposes of what the nature of the charter was. Now, interpreting the appropriations, for sure, that's relevant. What they did is relevant to that because that's when they did it. But it didn't change, as you said, twice. They didn't recharter it. Your Honor... It couldn't have changed characters. And legislators in 1921 cannot tell us what legislators in the 1860s were thinking when they did this charter. That's true, Your Honor. But, you know, there are many cases that say that when Congress touches a certain statute, decides to amend it, not amend it, Congress is talking about what that statute means. It is relevant to understanding the breadth of the statute, whether Congress is changing the character. What's the best case that members of Congress talking in 1928 can tell us what the statute meant at the time it was enacted in 1867, if that history and language wasn't there in 1867? Your Honor, I'd have to submit the best case to you right now. The case that I'm thinking of is Allen v. Milligan. The Supreme Court just said that in talking about the Voting Rights Act, when Congress reauthorized the Voting Rights Act, even though it didn't touch every single piece of the statute, the pieces that were untouched should be interpreted in a way consistent. The conversation is different from adding line appropriation. Your Honor, I'll have to get back to you with my best case on that. But don't you have a bigger problem? Even if we agree with you that Congress was acting in its federal national capacity when it chartered Howard, that doesn't make this a federal case. I mean, these are state law claims. We're supposed to interpret remand, I'm sorry, the removal statute narrowly for federalism concerns, which I don't think are any different here just because this is a District of Columbia, not a state. You have the burden, and to the extent that there's a tie, you lose. And I don't see any federal claim here. Your Honor, I disagree. And the case that I point you to on that would be Bender v. Jordan. It's cited on page 20 of our brief. And in that case, this court said, you know, in interpreting a breach of contract claim, which is similar to, I think, the type of claim that the plaintiffs are making here, that that claim was undoubtedly a federal claim under Grable because the contract that had been entered into was a contract that had been entered into because of a federal regulation that required companies to enter into indemnification agreements between their shareholders and their boards of directors. And there was a dispute about whether some sort of reimbursement was needed for legal expenses. And this court said, well, of course, the contract, understanding the terms of the contract, you need to look to the regulation that required them to enter into the contract. I think that's exactly what's happening here. If you look at Bylaw 1. Where do we have to go to the charter to answer anything about any of the claims in the first amended claim? Sure. So the first line of the bylaws is that the powers that are being exercised here are the powers that are granted pursuant to the charter. And then, you know, there are various claims in the plaintiff's complaint. I think my best point on this would be the quorum issue. As you heard my friend on the other side stand up and say they think that there is some sort of flaw with respect to how the bylaws were amended because a certain person or a certain number of people were not seated or were not noticed at the time. The charter specifically says that the board can conduct business of the university so long as it has a quorum of nine members, any nine members. I think it would be very difficult to adjudicate a breach of contract claim without understanding what the asserted contract is. And here, understanding the terms of the asserted contract requires looking at the at the charter itself. So even if we thought that was a federal question, why is it substantial? It's a substantial substantial in terms of being implicating federal law. Yes, Your Honor. As Grable and Gunn explained, substantial refers to the government's interest in it. I think there is a substantial federal interest in here. You don't have to look to the number of people affected or the geographic area affected. That's Gunn. Instead, you look to how heavy the federal government's interest is. I would point to several different things that indicate that the federal government's interest here is strong. The first of which I would say is, you know, Howard is statutorily obligated to provide an annual report to Congress and the Department of Education. I'm only aware of one other university that has that requirement. That's Gallaudet. The Secretary of Education is also a member of Howard's board of trustees and has attended Howard's board meetings in the past. I, again, am not aware of any other institution that that board, the secretary of the Department of Education, is statutorily required to be a member of. Howard has some obviously has links with the federal government in terms of its funding and appropriations. But how does this court possibly interpreting the charter raise a substantial question of interest to the federal government? Sure. Your Honor, I think that the example of Howard has, you know, an affiliation with the federal government doesn't make our interpretation of the charter a substantial federal question. Your Honor, I think it does. So, for example, plaintiff's claims could easily have been that the board was not able to conduct business unless the secretary of education was there. They're speaking about a specific member of the board that they think should have been in attendance. The secretary of education is one of those members. And so I think it's very the federal government has a substantial interest in in this specific running of this specific board. Congress has reaffirmed its interest by amending the charter and by enacting very federal government has a substantial interest. That's not the test is whether a substantial question of federal law is implicated. Federal government has a substantial interest in all kinds of very important private companies. But that does not make things as well them. And so I don't I don't think that's where's a substantial question of substantial federal inquiry that has to be taken here. Yes, Your Honor, to to continue on the example that I was just discussing that interpretation of federal law, there would be the requirements of the charter with respect to quorum, whether quorum requires specific people to be in attendance. As you know, sections three and four and seven all refer to like specific quorum requirements of the charter is going to answer anything in this case. At most, it's going to be a fight about bylaws. The fact that the charter authorizes bylaws isn't going to be no one's going to question that the charter authorizes bylaws or the bylaws federal law. No, Your Honor, the bylaws are not federal law and bylaws create they can't create a rising under jurisdiction. The bylaws, I believe, do create in this particular case a rising under jurisdiction because the claim that's being brought by the plaintiff cannot be adjudicated without referring to the chart without referring to the charter. They can't win. Your Honor, let's explain. The bylaws themselves, you're not arguing either they create federal law for purposes of rising under jurisdiction or that the bylaws by themselves would satisfy the great. The fact that someone wants to fight over the bylaws would create a substantial question under grable. No, Your Honor, not every fight about the bylaws is going to create a substantial question under grable. But I do think that just like in Bender, the interpretation of this contract requires reference to federal law. Where does it require? How? How? How? What is the requirement? No reference to the secretary of education of the charter. In the charter, the charter requires reporting to Congress. It's later a statute that requires that nothing to do with their argument. They're not saying you didn't file a report with Congress. They are saying there wasn't a proper quorum, Your Honor. That's OK. And that the charter answers that question. Yes, Your Honor. The chart. So if you look at the charter at Section four, I believe. All meetings of said boards may be called in such manner as the trustees prescribe and nine of them so assembled shall constitute a quorum to do business and a less number may adjourn from time to time. The charter answers the question of how many people need to be there to do business and who needs to be there to do that. That's the board may so authorize. And that gets us to the bylaws. Your Honor, it doesn't say as the board shall so author. Where are you reading it? I thought I'm looking at the addendum to my brief addendum. Page three said they shall appoint it. Section four. Section three is the one that references. All meetings of said boards shall be called in such manner as the trustees shall prescribe. And nine of them shall be a quorum. And so what I'm saying is manner as trustees shall prescribe. I assume they prescribe it by the bylaws. Is that right? I'm not seeing the last sentence in Section four. Oh, it may be called and said that the meetings may be called in a manner such as a board shall prescribe. Sure. Yeah. And then nine of them shall be assembled to be a quorum to do business. And if you look at, you know, the bylaws that they're citing page one. Section one, page one of the bylaws at J. One fourteen say, you know, the board is exercising all powers and authorities conferred by its active incorporation. I just don't I don't think it's possible for a court interpreting the bylaws to understand whether the bylaws have been violated, which is the claim they're making without referencing the charter. I mean, to reference an example that might be more familiar to your honor, it's as though somebody has brought a case saying that an agency actor ultraviarious by violating one of its regulations. You would, of course, look to the organic statute at the agency to answer that question. That's the same type of relationship happening here. Somebody has made an ultraviarious claim about a regulation, essentially. And you're trying to look at the court would need necessarily to look at the organic statute to decide whether the regulation was violated, whether the agency was actually acting ultraviarious. That's exactly the claim being being here. It's ultraviarious. Your honor, if I could just offer one other answer on the court's question. The court had also asked about whether Congress was acting pursuant to its national power or its local power. I would also note that in the years after the Home Rule Act, Congress enacted significant legislation relating to Howard, including the establishing the Department of Education. When it most recently changed the Department of Education, it provided powers to the Department of Education relating to the, quote, laws relating to the relationship between Gallaudet College and Howard University and the American Printing House for the Blind. Also, in 1984, Congress enacted another law concerning Howard's endowment. So Congress's continued activity in this space post the Home Rule Act, I think, is also significant. Finally, I'd ask your honor if it was possible to submit briefing on this issue. The court issued an order just a day and a half or so before our argument that seems to be very significant to the court. We'd appreciate the opportunity to file something longer than a 34-J letter or 28-J letter regarding this issue. Thank you. Thank you very much, counsel. Mr. Temple, we'll give you a few minutes. Your Honor, the appellees have made the case for the appellants. They have not cited one federal law that's implicated by the charter and the reference to the charter. They have alleged that you need to refer to the charter to interpret the simple question of whether the board acted without authority when its committee chairperson suspended an election for 18 months, deprived alumni, students, and faculties whose rights are articulated, more importantly, whose membership is required in Article I, Section 2, to be on the board, and then to vote after they did that to remove them. That is a typical common law governance question for a nonprofit corporation that need not be adjudicated in this court. It does not. There's nothing that the appellant stated that suggests that there's federal jurisdiction. In addition to that, even the lower court judge in his ruling on the remand at footnote 3 stated that the parties seem to agree that there's a contract issue. There's nothing here. They haven't cited a provision in the federal charter that the court needs to rely upon to interpret a very basic, very basic governance question. We submit to the court that, and I underscore in the reference that we made, it is they did not get up and say to you that the appellant is wrong. That independent individual decision was made and affirmed by the board. And when you look at the citations that we have, there are formal notes of recommendations that are adopted by the board. There's nothing, absolutely not a scintilla of evidence in this record, which shows that the board made a decision to suspend these elections. We close with that and say to the court that this is not a case of all that other than what our Supreme Court has articulated in applying the grable test that the appellees have cited in both the gun and the district and the Empire Health Choice cases. That, we submit, Your Honor, is the law that should apply. And with that, there is absolutely not here a disputed federal issue or a substantial federal issue that commands this court's jurisdiction. Thank you very much. Thank you. Thank you for submitting.
judges: Millett; Wilkins; Rao